IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CAINE PELZER )
   *Plaintiff*, )
 )
v. )
 )   Docket No. 1:20-cv-325E
 )
SECRETARY JOHN WETZEL, FORMER )
SECRETARY JEFFREY BEARD, )
TABB BICKELL )
   *Defendants*. )   **JURY TRIAL DEMANDED**

## SECOND AMENDED COMPLAINT

Plaintiff Caine Pelzer, by his attorneys at the Mizner Law Firm, files this Amended Complaint and states as follows:

**A. Parties.**

1. Plaintiff Michael Rivera is an adult individual who is currently incarcerated at the State Correctional Institution at Phoenix ("SCI Phoenix"), located at 10745 PA-18, Albion, Pennsylvania 16475.

2. Defendant John Wetzel is an adult individual who is employed by the Commonwealth Pennsylvania as the Secretary of the Department of Corrections, and who maintains offices located at 1920 Technology Pkwy, Mechanicsburg, PA 17050. Defendant Wetzel is sued in his individual capacity.

3. Defendant Jeffrey A. Beard served as the Secretary of the Department of Corrections for the Commonwealth of Pennsylvania, which is located at 1920 Technology Pkwy, Mechanicsburg, PA 17050, from 2001 to 2010. He was replaced by Defendant Wetzel.

4. Defendant Tabb Bickell is the Executive Deputy Secretary for Institutional Operations of the Department of Corrections for the Commonwealth of Pennsylvania, which is

1

located at 1920 Technology Pkwy, Mechanicsburg, PA 17050, from 2001 to 2010. Defendant Bickell is sued in his individual capacity.

### B. Jurisdiction and Venue

5. This Complaint includes claims made pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 1983, which provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and the laws" of the United States.

6. This Honorable Court has jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 & 1343.

7. This Complaint also includes pendant state law claims, over which this Honorable Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

8. Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred within the territorial jurisdiction of this District and the Defendants are subject to personal jurisdiction within this District.

### C. Facts

9. Plaintiff Caine Pelzer was a prisoner in SCI Albion at the time of filing, but has since been relocated to SCI Phoenix.

10. Mr. Pelzer has been continuously held in solitary confinement since approximately February 1, 2008, when he was placed on the restricted release list ("RRL"), without providing him any rationale for the designation, nor any opportunity to appeal the designation.

11. After five years on the RRL, Mr. Pelzer was placed on the "security threat group management unit" on July 30, 2013, without providing him any rationale for the designation, nor any opportunity to appeal the designation.

12. As a result, Mr. Pelzer was stripped of all minimal administrative custody privileges he had acquired over the past five years, which he served on the RRL without a single misconduct.

13. On November 6, 2014, Mr. Pelzer was transferred to SCI Dallas.

14. He was told that he was beginning a probationary phase, to be transferred back to the general population.

15. However, on November 6, 2015, Mr. Pelzer was advised that he was being placed back on the RRL, again without receiving any misconduct, or being given any hearing regarding his designation.

16. He was never advised why he was being discontinued from the probationary phase, or why he was being continued on RRL status.

17. On November 18, 2018, Mr. Pelzer was transferred to SCI Albion, where he remained on the RRL, and was held in solitary confinement in the area where suicidal prisoners are housed.

18. On April 16, 2021, Mr. Pelzer was transferred to SCI Phoenix, and remains in solitary confinement on RRL status.

19. Mr. Pelzer's more than thirteen years in solitary confinement have not been for any disciplinary or penological reason.

20. Mr. Pelzer did not receive a misconduct or a disciplinary hearing, which justified his initial or continued placement on the RRL.

21. Mr. Pelzer attempted to appeal his placement on the RRL using the grievance process established by the Department of Corrections when he was first given the designation in 2008, but his appeal was rejected on the grounds that RRL placement cannot be appealed.

22. The conditions which Mr. Pelzer have endured for over thirteen years are so cumulatively burdensome that they create punishment which exceeds all bounds of decency.

23. Since 2008, while on the RRL Mr. Pelzer has been confined to cells which measured approximately 7' by 12.'

24. Mr. Pelzer is deprived of social interaction, environmental stimulation, and proper mental health diagnosis and assessment because of his RRL designation.

25. Life in solitary confinement is exceptionally difficult, because Mr. Pelzer is denied access to even the most basic of human needs: mental health, sleep, social interaction, environmental stimulation and exercise.

26. During his thirteen (13) years of isolation and counting, Mr. Pelzer has spent the vast majority of his life alone in his cell.

27. Although he has been transferred among various institutions within the Department of Corrections, his cells have uniformly been only about the size of a parking space, which was further reduced by a toilet, sink and poured concrete "sleeping platform," leaving very little room for movement.

28. The Department of Corrections designed the cells in a staggered formation, to prevent any of the RRL prisoners from seeing each other.

29. Mr. Pelzer spends practically all of his time alone in his cell, and during the time he is out of his cell, he spends undergoing strip searches, showering alone in a stall, or being locked alone in a small outdoor cage, which was approximately the same size as his cell.

4

30. Mr. Pelzer is only permitted to shower three days per week, on weekdays.

31. These long-term deprivations of environmental stimulation and social interaction violate the Eighth Amendment's prohibition on cruel and unusual punishment due to the cognitive impairment, chronic depression, emotional pain and suffering, and other psychological harms that Mr. Pelzer had been subjected to, given the extraordinary length of time he spent in solitary confinement.

32. For the past thirteen years, Mr. Pelzer has been confined to a cell illuminated by artificial lights, 24 hours per day. The lights are never turned off.

33. During the entire period of solitary confinement, Mr. Pelzer has endured the extreme noise which is a hallmark of restricted housing units.

34. Unlike in the general population, the housing units on which Mr. Pelzer was confined were subject to checks every fifteen minutes during the day, and every thirty minutes at night, meaning a corrections officer would enter and exit each tier of the area through a solid steel door. The repeated process of entry and exit from each tier, and the use of bright flashlights during the checks, made sleep extremely difficult through the night.

35. Due to the 24 hour lighting and noise, Mr. Pelzer has only received an average of three to four hours of sleep per night, causing extreme sleep disorder and disruption to his circadian rhythms.

36. The perpetual lighting caused Mr. Pelzer to experience the disorienting sensation that there was never a meaningful transition from daylight to darkness, for thirteen years.

37. For the past thirteen years, Mr. Pelzer was confined to cells which are colder than the general prison population cells. On winter nights, the cold in the restricted housing units where Mr. Pelzer was confined, made already difficult sleep conditions all the more tortuous.

38. During his entire period of solitary confinement, Mr. Pelzer was confined to a cell containing a bed, steel toilet, steel sink, steel desk and stool, and cabinet. As such, Mr. Pelzer has very little remaining room to exercise or walk around.

39. Mr. Pelzer is restricted to going to "yard" in an exercise cage for one hour per weekday, containing no weights, or exercise equipment of any kind.

40. The fully enclosed cages are approximately seventy-five (75) square feet, providing less space than the cell in which Mr. Pelzer spent the remainder of his time.

41. On Saturdays and Sundays, Mr. Pelzer is held in his cell for twenty-four hours per day, without any opportunity to shower or go to the exercise cage in the yard.

42. For the past thirteen years, since February 1, 2008 through the present date, Mr. Pelzer has been subjected to the following depravations and inhumane treatment:

   a. Mr. Pelzer was given only 10-15 minutes to eat his meals alone in his cell.

   b. Mr. Pelzer was served lower-quality food than inmates in the general prison population.

   c. Mr. Pelzer was prohibited from participating in any of the educational programs which are available to prisoners in the general population.

   d. Mr. Pelzer was prohibited from participating in any organized activities in the prison.

   e. Mr. Pelzer was prevented from having contact visitation with clergy and family members.

   f. Mr. Pelzer was prohibited from having physical contact with any visitor, as all physical contact is forbidden for capital case prisoners by PADOC policy. Mr.

Pelzer was permitted one visit per week, which was required to take place through a glass and concrete partition.

g. Mr. Pelzer was subjected to a mandatory strip search and the possibility of a body cavity search every time he leaves and enters his cell.

h. Mr. Pelzer was placed in handcuffs and shackles every time he left his cell, and remained handcuffed and shackled until he was securely locked in another area, such as the exercise cage or the shower.

i. Mr. Pelzer was subjected to extreme limits on the amount of personal property he has been permitted to keep in his cell, which are much more limiting than those imposed on persons in the general prison population.

j. Mr. Pelzer was deprived of any meaningful interaction with any other prisoner, due to a strict "no talking" policy for prisoners in solitary confinement.

k. Mr. Pelzer was deprived of any meaningful interaction with any prison official or staff member.

l. Mr. Pelzer was deprived of the opportunity to participate in any form of communal religious worship or prayer, despite the fact that he is a devout Muslim.

m. Mr. Pelzer was deprived the opportunity to participate in any vocational, recreational or educational programs in the prison, forcing him to spend the vast majority of his time idle in his cell, with no constructive or positive use of his time.

n. Mr. Pelzer was kept in cells with doors which were sealed around their edges, to prevent any inmates from talking through the doors.

Case 1:20-cv-03325-RA-AL Document 681 Filed 05/18/22 Page 7 of 17

7

43. Thus, for the past thirteen years and counting, Mr. Pelzer has been almost totally deprived of all meaningful human contact, physical activity, personal property, and mental stimulation.

44. All of these conditions and restrictions were significantly harsher than those which were imposed upon prisoners in the general population of the Department of Corrections facilities.

45. Yet, they were imposed on Mr. Pelzer, despite the fact that he has not received any misconduct since being placed on the RRL.

46. Mr. Pelzer has never been told what he must do to be eligible for release from solitary confinement, or even to make it more likely that he would be released from his RRL status.

47. Every ninety days, during a cursory meeting of the Program Review Committee (PRC), Mr. Pelzer is informed that he will remain in solitary confinement indefinitely. When Mr. Pelzer asks the PRC what he can do to be removed from the RRL, the PRC concludes his hearing without providing him any substantive response.

48. As a result of spending over thirteen years in solitary confinement, Mr. Pelzer has experienced acute mental anguish, short-term memory loss, increased stress, severe anxiety, and other psychological injuries.

49. Mr. Pelzer has been diagnosed with situational depression, and is prescribed Zolof and Trazodone which he takes every day.

50. Mr. Pelzer is likely to experience all of the above harms and debilitating psychological impairments for the rest of his life, and to experience their worsening effects as his solitary confinement continues.

51. The risks inherent in spending over thirteen years in solitary confinement are obvious.

52. At all times relevant to this lawsuit, Defendant Wetzel knew the risks proposed by prolonged solitary confinement and knew that Mr. Pelzer in particular was suffering from his prolonged isolation, and yet he failed to take reasonable measures to end the deprivation of Mr. Pelzer's basic human needs.

53. Defendant Wetzel has previously testified that he was aware of the body of literature describing the effects of long-term solitary confinement.

54. Dr. Stuart Grassian is a Board Certified Psychiatrist who was on the faculty of the Harvard Medical School for over twenty-five years. He is a world renowned expert on the psychiatric effects of solitary confinement and has had extensive experience in evaluating the psychiatric effects of solitary confinement.

55. In the course of his professional involvement, Dr. Grassian has opined as an expert regarding the psychiatric impact of federal and state segregation and disciplinary units.

56. Dr. Grassian's body of scholarly work was recognized by Supreme Court Justice Anthony Kennedy in his concurring opinion in *Davis v. Ayala*, 576 U.S. 257, 289 (2015)("research still confirms what this Court suggested over a century ago: Years on end of near-total isolation exact a terrible price… common side effects of solitary confinement include anxiety, panic, withdrawal, hallucinations, self-mutilation, and suicidal thoughts and behaviors").

57. Dr. Grassian is the author of *Psychiatric Effects of Solitary Confinement*, 22 Wash. U. J. L. & Pol'y 325 (2006) and several other scholarly works on the psychiatric effects of solitary confinement.

9

58. Defendant Wetzel has previously admitted he was specifically familiar with Dr. Grassian's research, and had discussed Dr. Grassian's findings with other doctors.

59. Defendant Wetzel has previously admitted that an inmate's mental health should be considered when placing an inmate in long-term solitary confinement.

60. In recent years, the use of solitary confinement has been publicly condemned as unnecessary and inhumane. When he described the *Davis* case cited above, Justice Kennedy told the House Appropriation Subcommittee on Financial Services and General Government: "This idea of total incarceration just isn't working, and it's not humane…. Solitary confinement literally drives men mad."

61. In 2016, the Department of Corrections publicly acknowledged "the need to reduce the use of administrative segregation (known as restrictive housing in Pennsylvania)" and vowed that it "is committed" to doing this.

62. On or about April 18, 2022, the Department of Corrections promulgated a new DC ADM 802 policy, which among other revisions made the Executive Deputy Secretary for Institutional Operations ("EDSI") of the Department of Corrections, responsible for the placement of prisoners onto the RRL, and removal from the RRL.

63. Tabb Bickell, the current EDSI within the Department of Corrections, thus has final authority and responsibility for Mr. Pelzer's continued placement on the RRL, and is the sole person who is able to authorize his release from the RRL.

### D. Legal standard.

64. The Supreme Court has interpreted the Eighth Amendment "to impose affirmative duties on prison officials to 'provide humane conditions of confinement.'" *Young v. Martin*, 801 F.3d 172, 177 (3d Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

65. The United States Supreme Court has explained "that the length of confinement [in isolation] cannot be ignored in deciding whether the confinement meets constitutional standards." *Hutto v. Finney*, 437 U. S. 678, 686 (1978); *see also Young*, 960 F.2d at 364 ("the duration and conditions of segregated confinement cannot be ignored in deciding whether such confinement meets constitutional standards.").

66. The Third Circuit has followed. *See Union Cnty. Jail Inmates v. Di Buono*, 713 F.2d 984, 1000 (3d Cir. 1983) (length of confinement a factor in analyzing conditions under the Constitution); *Peterkin v. Jeffes*, 855 F.2d 1021, 1025 (3d. Cir. 1988) ("objective factors which a court must examine in prison conditions cases include basic human needs such as food, shelter, and medical care as well as sanitation, safety, the physical plant, educational/rehabilitation programs, the length of confinement, and out of cell time."); *Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir. 1996) ("the length of confinement, the amount of time prisoners must spend in their cells each day, sanitation, lighting, bedding, ventilation, noise, education and rehabilitation programs, opportunities for activities outside the cells, and the repair and functioning of basic physical facilities such as plumbing ventilation and showers").[1]

---

[1] *Accord DeSpain v. UpHoff*, 264 F.3d 965, 974 (10th Cir. 2001) ("in general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an eighth amendment violation, while "substantial deprivation of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration."); *Sheley v. Dugger*, 833 F.2d 1420, 1429 (11th Cir. 1987) (duration of solitary confinement cannot be ignored by courts); *Pepperling v. Crist*, 678 F.2d 787, 789 (9th Cir. 1982) ("the deprivations associated with an institutional lockup, including 24 hour confinement, and curtailment of all association, exercise abnormal vocational and educational activity, they constitute a due process violation, as well as a violation of the eighth amendment, if they persist too long."); *O'Brien v. Moriarty*, 489 F.2d 941, 944 (1st Cir. 1974) ("imposing inappropriately, or for too long a period, even the permissible forms of solitary confinement might violate the eighth amendment. Cases upholding instances of solitary confinement involve most often its imposition as a short-term punishment for disciplinary infractions.").

67. In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court concluded that state-created liberty interests arise when a prison's action imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id* at 484.

68. In *Shoats v. Horn*, the Third Circuit held "we have no difficulty concluding that eight years in administrative custody, with no prospect of immediate release in the near future, is 'atypical' in relation to the ordinary incidents of prison life, and that [plaintiff's] eight-year confinement subjects him to conditions that differ significantly from 'routine' prison conditions in Pennsylvania state institutions" thereby posing a significant hardship on the plaintiff. 213 F.3d 140, 144 (3d Cir. 2000).

69. In *Hewitt v. Helms,* 459 U.S. 460, 476 (1983), the Supreme Court explained that inmates who were being placed in solitary confinement for administrative -- rather than disciplinary -- reasons, were entitled to due process. The Court explained what process was due:

> An inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation. Ordinarily a written statement by the inmate will accomplish this purpose, although prison administrators may find it more useful to permit oral presentations in cases where they believe a written statement would be ineffective.

70. This principle was reaffirmed in *Wilkinson v. Austin*, 545 U.S. 209, 228-29 (2005) when the Supreme Court held that due process required: (a) notice of the charges against prisoner, (b) an opportunity to be heard, and (c) notice of any adverse decision.

71. In 2017, the Third Circuit has emphasized that "this right to procedural due process protections is neither abstract nor symbolic, but both meaningful and required." *Williams v. Sec'y Pa. Dep't of Corr.,* 848 F.3d 549 (3rd. Cir. 2017).

## COUNT I - VIOLATION OF THE EIGHTH AMENDMENT
## DELIBERATE INDIFFERENCE

72. The averments in the preceding paragraphs are incorporated by reference, as if set forth in full herein.

73. Defendants Beard and Wetzel promulgated, approved, implemented and enforced a policy which required RRL status prisoners to remain in solitary confinement until the Secretary approved them to be released from solitary confinement back into the general population.

74. At all times relevant to this Complaint, Defendants Beard and Wetzel were acting under color of state law and in their capacities as representatives of the PADOC.

75. Pursuant to an update to the Department of Correction's policy, Defendant Bickell is now solely responsible for continuing Mr. Pelzer on the RRL.

76. As a result of this policy, Mr. Pelzer was held in continuous solitary confinement from February 1, 2008 through the present.

77. Defendants Beard and Wetzel were well aware of the scholarly research which indicated the severely negative impact of long term solitary confinement on mental health.

78. Defendants Beard and Wetzel exhibited extreme deliberate indifference to the health and wellbeing of Mr. Pelzer by promulgating, approving, implementing and enforcing the policy which kept Mr. Pelzer in solitary confinement, without any ability to be heard by them or to improve his chances of being removed from the RRL.

79. Since the change in Department of Corrections policy, Defendant Bickell has not permitted Mr. Pelzer to be stepped down from the RRL.

80. As a direct and foreseeable result of Defendants Beard's, Wetzel's and Bickell's deliberate indifference, Mr. Pelzer has suffered:

   a. Loss of mental health;

   b. Stress;

   c. Anxiety;

   d. Depression;

   e. Suicidal thoughts;

   f. Mental Anguish;

   g. Fear; and

   h. Treatment which fell below the minimum standards required by the Eighth Amendment to the Constitution.

WHEREFORE, Plaintiff Caine Pelzer respectfully requests that this Honorable Court enter judgment in his favor and against Defendants Beard, Wetzel and Bickell, in an amount in excess of $75,000.00, along with all other relief permitted by law.

### COUNT II - VIOLATION OF THE FOURTEENTH AMENDMENT
### VIOLATION OF DUE PROCESS RIGHTS

81. The averments in the preceding paragraphs are incorporated by reference, as if set forth in full herein.

82. Mr. Pelzer has been held in solitary confinement for thirteen years and counting without any explanation for his status or any opportunity to challenge it.

83. Mr. Pelzer is entitled to due process in regards to his placement on the RRL, including an opportunity to be heard by the decision-maker, the Secretary of the Department of Corrections.

84. Mr. Pelzer has not been permitted any type of process whatsoever.

85. He never had the opportunity to address the decision-makers, Defendants Wetzel and Beard, who were the only persons who could have released him from solitary confinement.

86. As a direct and foreseeable result of this deprivation, Mr. Pelzer was held without human contact for thirteen years, and has suffered:

   a. Loss of mental health;

   b. Stress;

   c. Anxiety;

   d. Depression;

   e. Suicidal thoughts;

   f. Mental Anguish;

   g. Fear; and

   h. Treatment which fell below the minimum standards required by the Eighth Amendment to the Constitution.

WHEREFORE, Plaintiff Caine Pelzer respectfully requests that this Honorable Court enter judgment in his favor and against Defendants Beard, Wetzel and Bickell, in an amount in excess of $75,000.00, along with all other relief permitted by law.

Respectfully submitted,

MIZNER LAW FIRM

By: /s/ John F. Mizner

John F. Mizner
PA Bar No. 53323
jfm@miznerfirm.com

Joseph P. Caulfield
PA bar No. 322823

jpc@miznerfirm.com

311 West Sixth Street
Erie, Pennsylvania 16507
814.454.3889

*Attorneys for the Plaintiff*

16

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAINE PELZER ) | |
|    *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | Docket No. 1:20-cv-325E |
| SECRETARY JOHN WETZEL, FORMER ) | |
| SECRETARY JEFFREY BEARD ) | |
|    *Defendants*. ) | **JURY TRIAL DEMANDED** |

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2022, the foregoing Second Amended Complaint was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all parties who have appeared of record by operation of the Courts ECF system and constitutes service of this filing under Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure. Those parties may access this filing through the courts ECF system.

/s/ John F. Mizner