IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAINE PELZER | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | Docket No. 1:20-cv-325E |
| SECRETARY JOHN WETZEL, FORMER | ) | |
| SECRETARY JEFFREY BEARD, | ) | |
| EDSI TABB BICKELL, | ) | |
| *Defendants*. | ) | **JURY TRIAL DEMANDED** |

### PLAINTIFF'S PRETRIAL STATEMENT

Plaintiff Caine Pelzer, by his attorneys at the Mizner Law Firm, files this Pretrial Statement and states pursuant to L.R.Civ.P. 16(1)(C) and states as follows:

### Introduction

Plaintiff Caine Pelzer was banished to solitary confinement for more than sixteen (16) consecutive years, in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. During that time, Mr. Pelzer has been deprived of his substantive and procedural due process rights in violation of the United States Constitution, as he was refused any meaningful review of his placement in solitary confinement by a decision-maker. Mr. Pelzer's right to Due Process was violated by the failure to have any process for Mr. Pelzer to challenge his continued stay in solitary confinement. The policy has failed to provide Mr. Pelzer with: 1) adequate notice of when his status was being reviewed; 2) meaningful justification for his continued solitary confinement; 3) information regarding what he must do to re-enter the general population; and 4) any meaningful opportunity to be heard by a decision-maker. Worst of all, the no objective criteria was used to review Mr. Pelzer continued incarceration in solitary confinement.

1

**BRIEF NARRATIVE STATEMENT OF THE FACTS**

Mr. Pelzer was deprived of numerous basic human needs, including environmental stimulation, social interaction, psychological health, emotional well-being, sleep, exercise, nutrition and fundamental human dignity for sixteen (16) years. The refusal to release Mr. Pelzer from solitary confinement was made with deliberate indifference to his condition, and in reckless disregard of his rights. These willful actions caused him actual mental anguish and suffering, including increased stress, heightened anxiety, severe difficulty concentrating, short-term memory problems, depression, and unfathomable emotional pain and suffering.

Mr. Pelzer has been held in circumstances amounting to solitary confinement in various institutions of the Department of Corrections, since approximately February 1, 2008. Mr. Pelzer spent more than ninety-six (96%) of his life in his cell. He spent the remaining 4% of his life undergoing strip searches, showering alone in a stall, or being locked alone in a small outdoor cage. His cell is approximately ninety-one (91) square feet, which not counting the area taken up by fixtures in the cell, allowed Pelzer fifty-six (56) square feet of space.

Mr. Pelzer is isolated in his cell twenty-three (23) to twenty-four (24) hours per day, seven days per week, fifty-two (52) weeks per year for seventeen (17) years. Much of the minimal space in his cell was taken up by his steel bunk, stainless steel sink, toilet, desk and cabinet which severely restricted his ability to exercise. He is allowed to go to the outside exercise cage for two hours at a time, three times a week. The cage is approximately seventy-five (75) square feet, he is not permitted to have exercise equipment in the cage.

Even the most basic of human behavior and comfort were tightly restricted. Mr. Pelzer was forced to eat all meals by himself and prohibited him from speaking to other prisoners. Mr. Pelzer was only permitted to shower three times per week, for ten minutes. Mr. Pelzer's contact

with non-prisoners was also severely restricted. He was required to conduct all visits through a glass partition which prohibited him from having any physical contact with visitors. Even these visits were limited.

The reason for these nearly sixteen years of solitary confinement, is that he was placed in an administrative program called the Restricted Release List ("RRL") by Secretary John Wetzel. RRL is a state of administrative custody where an inmate is held in solitary confinement in the RHU, and is subject to severe restrictions on his ability to interact with anyone, whether it be staff, other inmates or visitors.

Until approximately April 18, 2022, pursuant to the policy of the Pennsylvania Department of Corrections, inmates placed on RRL status may only return to the general population with the express authorization of one person, the Secretary of the DOC. Absent that authorization, the inmate is held in solitary confinement indefinitely.

Four years after being placed on the RRL, in 2012, an annual review by the Secretary was begun. Prior to the Secretary's annual review, the facility's Deputy Superintendent and Superintendent, along with the Regional Deputy Secretary and Executive Deputy Secretary all had a "vote" on whether an inmate should remain on the RRL. This "vote sheet" was provided to the sole decision maker, the Secretary, who reviewed the votes, commented and decided whether to release an inmate from the RRL. Secretary Wetzel has previously testified that to decide whether an inmate should remain in solitary confinement, he tried to "synthesize everyone's recommendation and come up with the best decision for the department."

In this case, Secretary Wetzel and Secretary Little have not had the benefit of hearing from Mr. Pelzer directly when making their decision, because prison officials are not required to - and do not - send an RRL status inmate's written statements to the Secretary, even though the

Secretary was the sole decision-maker. That was the old policy that covered about ten (10) years of Mr. Pelzer's time on the RRL

On or about April 18, 2022, the Department of Corrections promulgated a new DC ADM 802 policy, which among other revisions made the Executive Deputy Secretary for Institutional Operations ("EDSI") of the Department of Corrections, responsible for the placement of prisoners onto the RRL, and removal from the RRL. Tabb Bickell, the EDSI within the Department of Corrections at the time this policy was implemented, thus has final authority and responsibility for Mr. Pelzer continued placement on the RRL, and is the sole person who is able to authorize his release from the RRL. Mr. Pelzer has never communicated with Mr. Bickell.

Long-term solitary confinement is known to the Courts of the United States of America, as well as doctors and prison officials, to have serious negative long-term health consequences. Defendant Wetzel has previously testified that he was aware of the body of literature describing the effects of long-term solitary confinement. Supreme Court Justice Anthony Kennedy wrote in his concurring opinion in *Davis v. Ayala*:"research still confirms what this Court suggested over a century ago: Years on end of near-total isolation exact a terrible price… common side effects of solitary confinement include anxiety, panic, withdrawal, hallucinations, self-mutilation, and suicidal thoughts and behaviors." 576 U.S. 257, 289 (2015). When he described the *Davis* case cited above, Justice Kennedy told the House Appropriation Subcommittee on Financial Services and General Government: "This idea of total incarceration just isn't working, and it's not humane…. Solitary confinement literally drives men mad."

In 2016, the Department of Corrections publicly acknowledged "the need to reduce the use of administrative segregation (known as restrictive housing in Pennsylvania)" and vowed that it "is committed" to doing this.

The severely restrictive nature of the RRL, coupled with its indeterminate length, has inflicted a terrible toll on Mr. Pelzer's mental health. Mr. Pelzer has been independently examined by Dr. Jeremy Colley,[1] a forensic psychiatrist, who determined with "a reasonable degree of medical certainty, that Mr. Pelzer suffers from Major Depressive Disorder as defined in the Diagnostic and Statistical Manual, 5th Edition (DSM-5), a significant cause of which has been the conditions of confinement while in prison, specifically, while housed via the Restricted Release List (RRL) program." The risks inherent in long-term solitary confinement are obvious. As Dr. Colley has explained in his attached report,

> The medical record for Mr. Pelzer shows clearly that since 2008, he has consistently received treatment, including antidepressant medication, for symptoms of depression, anxiety, insomnia, lack of motivation (also known as anhedonia), difficulty concentrating, reduction in appetite, and suicidal thoughts. Mr. Pelzer continued to complain of these symptoms on my examination… in Mr. Pelzer's case, his symptoms have clearly resulted in clinically significant distress, given Mr. Pelzer requested treatment for his complaints, and he, in fact, did receive medication and other therapies for these complaints.
>
> Mr. Pelzer had no history of suffering from depressive symptoms prior to 2008; the chart is clear that he and his treating clinicians have attributed his signs and symptoms to his conditions of confinement, along with his perception of lack of clarity for the reasons he was placed on the RRL and how to get off it. Mr. Pelzer may have had an underlying predisposition to developing Major Depressive Disorder prior to 2008 that never manifested, but the fact that his signs and symptoms became clinically significant following his exposure to segregated settings show that the conditions of confinement were a significant cause of developing this mental disorder.

---

[1] Dr. Colley, a graduate of both Princeton University and Columbia University College of Physicians and Surgeons, is an Associate Professor of Psychiatry at the New York University School of Medicine (NYUSOM) and former Associate Chief of Psychiatry and Director of Forensic and Emergency Psychiatry at Bellevue Hospital Center. He is certified by the American Board of Psychiatry and Neurology and the American Board of Medical Specialties in Adult Psychiatry and Forensic Psychiatry.

Mr. Pelzer's engaging in self harm, including suicide attempts and hunger striking, is best understand from this perspective – in the context of living in segregated settings, with relatively few ways to cope given his austere conditions and inability to control his environment, combined with feeling that he has exhausted other pro-social options to change his situation, such as appeals and legal recourse. I do not consider these methods of coping as adaptive, nor as simple oppositional and antisocial behaviors, but, instead, a sign of functional impairment caused in part by his depression, filtered through an active coping style, given, if anything, his continued efforts to protest his conditions of confinement and relieve his depression have sabotaged his chances of coming off the RRL, according to the custodial records reviewed.

Mr. Pelzer is not simply sad, as the DSM 5 explains the difference: "Periods of sadness are inherent aspects of the human experience. These periods should not be diagnosed as a major depressive episode unless criteria are met for severity (i.e., five out of nine symptoms), duration (i.e., most of the day, nearly every day for at least 2 weeks), and clinically significant distress or impairment." As I have explained, Mr. Pelzer's complaints meet the diagnostic criteria for Major Depressive Disorder.

(Colley Report, p. 13-14).

## STATEMENT OF THE DAMAGES CLAIMED

Mr. Pelzer seeks compensatory damages for injury to his mental health, pain, suffering, mental anguish, anxiety, humiliation, and the loss of life's pleasures caused by his unconstitutional retention on the RRL over the past nearly sixteen years, as well as punitive damages and attorney fees.

## WITNESSES

1. Plaintiff Caine Pelzer
   To be contacted through counsel
   To testify as to both liability and damages

2. Dr. Jeremy Colley

        To be contacted through counsel
        To testify as an expert to both liability and damages

3.     Defendant former Secretary John Wetzel
        To be contacted through counsel
        To testify as to both liability and damages

4.     Defendant former Secretary Jeffrey Beard
        To be contacted through counsel
        To testify as to both liability and damages

5.     Defendant IDSI Tabb Bickell
        To be contacted through counsel
        To testify as to both liability and damages

6.     Corporate Representative of the Department of Corrections
        To be contacted through counsel
        To testify as to liability

Plaintiff reserves the right to call any other witness listed by Defendants in their Pretrial Statement. Plaintiff reserves the right to supplement this list a reasonable amount of time before trial.

## DESIGNATIONS OF WITNESS TESTIMONY INTRODUCED BY DEPOSITION

None.

## EXHIBITS

1. CV of Dr. Jeremy Colley

2. Mental Health Records of Caine Pelzer, produced by the Department of Corrections

3. RRL Vote Sheets for Caine Pelzer, produced by the Department of Corrections

4. Program Review Committee notes for Caine Pelzer, produced by the Department of Corrections

5. Cell History Records for Caine Pelzer, produced by the Department of Corrections

6. Misconduct History Records for Caine Pelzer, produced by the Department of Corrections

7. Correspondence between Mr. Pelzer and the Secretary's Office of August 20, 2020 and Sept. 11, 2020

8. Grievance Documents of Mr. Pelzer, related to his placement on the RRL

9. Any document in the possession of the Department of Corrections which supports or plays a role in either placing Mr. Pelzer on the RRL, or retaining Mr. Pelzer on the RRL.

## **LEGAL ISSUES TO BE ADDRESSED AT THE PRETRIAL CONFERENCE**

Plaintiff anticipates filing a Motion in Limine, on the basis that the psychological evaluation document from 2019 prepared in conjunction with Mr. Pelzer's retention on the RRL, is not an expert report and is not admissible as opinion evidence. In particular, the 2019 "evaluation" is not signed, and provides no opinions within a reasonable degree of professional certainty on either of the questions presented; namely, whether Mr. Pelzer has suffered injury to his mental health since Feb. 1, 2008, and whether that injury to his mental health is attributable to the circumstances of his incarceration while on the RRL.

## **EXPERT REPORTS**

Please see attached the Expert Report of Dr. Jeremy Colley, and his CV.

Respectfully submitted,

Date: January 10, 2024

MIZNER LAW FIRM

By: /s/ John F. Mizner

8

                John F. Mizner
                PA Bar No. 53323
                jfm@miznerfirm.com

                Joseph P. Caulfield
                PA Bar No. 322823
                jpc@miznerfirm.com

                311 West Sixth Street
                Erie, Pennsylvania 16507
                (814) 454-3889

                *Attorneys for the Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAINE PELZER | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | Docket No. 1:20-cv-325E |
| SECRETARY JOHN WETZEL, FORMER | ) | |
| SECRETARY JEFFREY BEARD, | ) | |
| EDSI TABB BICKELL, | ) | |
| *Defendants*. | ) | **JURY TRIAL DEMANDED** |

### CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2024, the foregoing Pretrial Statement was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all parties who have appeared of record by operation of the Courts ECF system and constitutes service of this filing under Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure. Those parties may access this filing through the courts ECF system.

/s/ John F. Mizner

John F. Mizner